FILED
JAMES BONINI
CLERK

2012 SEP 14  PM 3: 54

U.S. DISTRICT COURT
SOUTHERN DIST.OHIO
EAST. DIV. COLUMBUS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Jessica Cameron,

      Plaintiff,

      v.

Abercrombie & Fitch Co., *et al.*,

      Defendants.

Case No. 2:10–cv–631

Judge Michael H. Watson

## OPINION AND ORDER

Jessica Cameron ("Plaintiff") sues various Abercrombie & Fitch corporations

("Defendants") for an alleged violation of the Fair Labor Standards Act ("FLSA"), 29

U.S.C. § 201, *et seq.* and the Ohio Minimum Fair Wage Standards Act, Ohio Revised

Code § 4111.01, *et seq.*  Amd. Compl. ¶¶ 16, 19, ECF No. 4.  Plaintiff asserts

Defendants misclassified her as a salaried employee exempt from overtime pay, and

she was therefore deprived of overtime pay throughout her employment.  Defendant

Abercrombie & Fitch Trading Co. moves for summary judgment.  Mot. Summ. J., ECF

No. 39.  For the following reasons, the Court denies Defendant's motion for summary

judgment.

## I. FACTS

Plaintiff is a resident of Franklin County, Ohio.  Defendants are various

Abercrombie & Fitch and John Doe corporations.  Defendants Abercrombie & Fitch, Co.

and Abercrombie & Fitch Management Co. are foreign corporations.  Defendants

Abercrombie & Fitch Trading, Co., Abercrombie & Fitch Fulfillment Co., and

Abercrombie & Fitch Stores, Inc. are Ohio corporations.  Each of the Abercrombie

defendants' principal place of business is in New Albany, Ohio. Defendant John Doe Company No. 1 is a foreign corporation with its principal place of business in New Albany, Ohio, and Defendant John Doe Company No. 2 is a domestic corporation with its principal place of business in New Albany, Ohio.

Plaintiff alleges in her first amended complaint that she was employed by one or more Defendants from May 31, 2005 through February 2, 2010 at a New Albany store as a Technical Designer ("Tech Designer").[1] She contends that throughout her employment, Defendants classified her as a salaried employee exempt from overtime pay, but she should have been classified as a salaried employee not exempt from overtime pay. As a result of the alleged misclassification, Plaintiff states she regularly worked in excess of forty hours a week without overtime pay.

## II. STANDARD OF REVIEW

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(a), which provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The Court must grant summary judgment if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Van Gorder v. Grand Trunk Western R.R., Inc.*, 509

---

[1]Plaintiff asserts that she is unable to determine exactly which defendant employed her because different company names appeared on various employment documents. Plaintiff was initially hired as an Assistant Technical Designer and was eventually promoted to Technical Designer.

F.3d 265 (6th Cir. 2007).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing there is a genuine issue of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence. *Matsushita Elec. Indus. Co.*, 475 U.S. 574, 587 (1986); *Pittman v. Cuyahoga Cnty. Dept. of Children and Family Serv.*, 640 F.3d 716, 723 (6th Cir. 2011). The Court disregards all evidence favorable to the moving party that the jury would not be required to believe. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009).

Thus, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pittman*, 640 F.3d at 723 (quoting *Anderson*, 477 U.S. at 251–52).

### III. ANALYSIS

Plaintiff argues the failure to pay overtime wages violated the federal FLSA, 29 U.S.C. § 201, *et seq.*, and associated regulations, 29 C.F.R. § 501, *et seq.*, as well as

Ohio Revised Code § 4111.01, *et seq.*[2]

Only A&F Trading Co. moves for summary judgment.[3]  Defendant argues
Plaintiff is exempt from the FLSA overtime pay requirement under both the
administrative exemption and the professional exemption.  "FLSA overtime exemptions
are 'affirmative defense[s] on which the employer has the burden of proof,' . . . and
those exemptions 'are to be narrowly construed against the employer seeking to assert
them.'" *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007)
(quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–67 (1974) and *Arnold v.
Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)).  The Court reviews each exemption in
turn.

## A. Administrative Exemption

The FLSA exempts from the overtime pay requirements "any employee
employed in a bona fide . . . administrative . . . capacity . . . ." 29 U.S.C. § 213(a)(1).
An employee employed in a bona fide administrative capacity is any employee:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per
> week . . . exclusive of board, lodging or other facilities;
> (2) Whose primary duty is the performance of office or non-manual work
> directly related to the management or general business operations of the
> employer or the employer's customers; and
> (3) Whose primary duty includes the exercise of discretion and independent

---

[2] Although Plaintiff asserts a claim under both federal and state law, the Court need only analyze
the federal law as "the Ohio statute expressly incorporates the standards and principles found in the FLSA
[Fair Labor Standards Act]." *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir.
2007).

[3] In a footnote, A&F Trading Co. states that none of the other named Defendants employed
Plaintiff, and therefore, none of the other named Defendants are proper parties.  The footnote is
insufficient to terminate the remaining defendants.  The other named Defendants are directed to file a
motion to dismiss the case as to them or confer with Plaintiff and file a stipulation of dismissal pursuant to
Federal Rule of Civil Procedure 41(a)(1)(A)(ii).

judgment with respect to matters of significance.

29 U.S.C. § 541.200(a).

**1. Salary or Fee Basis of Not Less Than $455 per week**

An employee is considered to be paid on a salary basis under the regulations "if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602. With few exceptions, "an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked." *Id.*

There is no dispute that Plaintiff's annual salary ranged from $40,000 to $61,500, exclusive of benefits, during her employment with Defendant or that she was issued paychecks regularly. Mot. Summ. J. 12, ECF No. 39; Resp. 5, ECF No. 45. Moreover, Plaintiff testified in her deposition that she always received her full salary in each paycheck and never had her pay docked. Cameron Dep. 61:23-62:7, ECF No. 38-1.

Nevertheless, Plaintiff argues that questions of fact remain as to whether she was an employee paid on a salary basis under the regulations because evidence suggests Defendant not only kept track of her hours worked but also compensated her according to the hours worked. Resp. 5–6, ECF No. 45. In support, she cites Exhibit 4 to Kabbes' deposition, which she says lists compensation of $830.77 for thirty-two hours of work and compensation of $1,246.15 for forty-eight hours of work during a single pay period. She asserts that such itemization of compensation raises a genuine issue of fact as to whether and how Defendant calculated and paid compensation.

Resp. 5, ECF No. 45.  Defendant responds that the exhibit demonstrates Plaintiff received on a regular (bi-weekly) basis a predetermined amount ($2,076.92 as of May 2007).

The exhibit appears to be a screen-shot of pay stubs.  Defendant is correct; the exhibit shows that for each pay period listed (which was a weekly or less frequent basis), Plaintiff received a predetermined amount ($2,076.92).  In three of the four screenshots, the payment simply shows eighty hours worked during the pay period.  The fourth screenshot reflects the eighty hours broken down into thirty-two and forty-eight, but it does not suggest Plaintiff's pay was subject to reduction for the amount of hours worked.  Indeed, Plaintiff testified that her pay was never docked.

There is no issue of material fact that Plaintiff was paid on a salary basis, even if one pay check purported to keep track of the number of hours worked.  *Acs v. Detroit Edison Co.*, 444 F.3d 763, 768 (6th Cir. 2006) ("an employer may satisfy the salary-basis test even though it chooses to pay salaried employees on an hourly basis."); Opinion Letter, Dept. Labor, Wage and Hour Division, 2003 WL 23374601 (July 9, 2003) ("the tracking or accounting of actual hours worked by exempt employees does not violate the 'salary basis' requirements.")

## 2. Primary Duty is the Performance of Office Work Directly Related to the General Business Operations of Employer

The second prong of the administrative exemption requires that the employee's "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or employer's customers." 29 C.F.R. § 541.200(a)(2).  The requirement thus contains two parts.

**i. Office or Non-Manual Work**

Defendant argues Plaintiff's primary duty was quality control and that her other significant duties included: (1) controlling production costs; (2) training, mentoring, and managing other Tech Design employees; and (3) mediating intra-company disputes. Plaintiff argues there are questions of fact as to whether she performed solely non-manual work because, in addition to performing primary duties of quality control or audit functions, Plaintiff also performed manual work that should be taken into account. Plaintiff measured garments, adjusted and manipulated garments, and spent most of her time creating and adjusting tech packs. Plaintiff avers she thus did more than "classic 'office work.'" Resp. 7, ECF No. 45. Defendant replies that the exemption only requires that the *primary duty* be office work, and Plaintiff's admissions show this requirement is met.

Defendant's argument is well taken. The determination of whether the work is non-manual must be based on all of the facts. 29 C.F.R. § 541.700(a). Factors to consider include: (1) the importance of the exempt duties compared to other duties; (2) the amount of time spent performing exempt work; (3) the relative freedom from direct supervision; and (4) the relationship between the salary and wages paid to other employees for nonexempt work. *Id.* The amount of time spent performing exempt work can be a useful guide but is not itself determinative. 29 C.F.R. § 541.700(b).

Although the regulations do not define non-manual work, they give insight as to what the regulations consider to be manual work. The regulations state that employees "who perform work involving repetitive operations with their hands, physical skill and

energy" do not meet the office/non-manual requirement." 29 C.F.R. § 541.601(d).[4] Further, the scope section of the regulations states the exemptions do not apply to "manual laborers or other 'blue collar' workers" who "gain the skills and knowledge required for performance of their routine manual and physical work through apprenticeships and on-the-job training . . . ," such as "carpenters, electricians, mechanics, plumbers, iron workers, craftsmen, operating engineers, longshoremen, construction workers and laborers." 29 C.F.R. § 541.3(a).

Further, only the primary duty must be non-manual, and "primary duty" is defined as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a).[5]

Here, Plaintiff testified her primary role was quality control, although most of her time was actually spent working on tech packs. Cameron Dep. 36:20–37:2; 84:22–86:23, ECF No. 38-1. Nevertheless, putting emphasis on the character of Plaintiff's job as a whole, as the Court is required to do when making this determination, 29 C.F.R. § 541.700(a), it is clear that even Plaintiff's time spent doing manual work on tech packs was for the overarching purpose of fulfilling her quality control role. Cameron Dep. 84:17–86:12, ECF No. 38-1. Her time was also spent largely on meetings and training. Id. at 87:5-18. These duties are not of the type found to be

---

[4]29 C.F.R. § 541.601(d) relates to the "highly compensated" exemption, which, like the administrative exemption, "applies only to employees whose primary duty includes performing office or non-manual work." Id. It is thus helpful to the Court's analysis of what constitutes non-manual work.

[5]Defendant argues that if an employee works in an office, she satisfies the criteria, citing Mulverhill v. New York, No. 87–cv–853, 1989 WL 154827 (N.D. NY Dec. 19, 1989). Mulverhill is not instructive, however, because it interpreted the 1988 version of the regulations, which included a subsection on "nonmanual work." Likewise, Plaintiff cites Renfro, 370 F.3d at 517, which interpreted the same provision that existed in Mulverhill. The provision was removed in the 2005 Code of Federal Regulations.

manual in § 541.601.  In fact, Plaintiff admitted that during "the entirety of [her] employment, [she] performed office-type work primarily . . . paperwork, working on a computer, meetings, those sorts of things[.]"  *Id.* at 28:13–17.  Thus, there is no genuine issue of material fact that Plaintiff's primary duty was non-manual work.

**ii. Directly Related**

Second, "[t]o qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.201(a).  Additionally, "the 'directly related' test is met by employees who 'assist[ ] with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.'" 29 C.F.R. § 541.201(a).  The regulations expressly state that work directly relating to management or general business operations includes quality control and labor relations.  29 C.F.R. § 541.201(b).

Defendant contends that Plaintiff's duties fall under this element of the exemption because her primary duty was that of quality control.  Plaintiff counters that the regulations distinguish between work involving administrative operations and that involving production, and Plaintiff's duties were directly related to the production of clothes.

Despite Plaintiff's characterization of her duties, it is clear from her deposition testimony that she was not involved in the manufacturing or selling of Defendant's product in the manner contemplated by the regulations so as to be removed from the exemption.  *See* § 541.201(a) (providing, as examples, employees working on a

manufacturing production line or selling products in a retail establishment).  Plaintiff did not work on a production line; her primary duty of quality control falls within the administrative exemption as it is explicitly listed as an example of the type of work exempt under 29 C.F.R. § 541.201(b).  Defendant has met its burden with respect to the second prong.

### 3. Exercise of Discretion and Independent Judgment

The third prong of the administrative exemption analysis requires the employee's "primary duty include[] the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a)(3).  The exercise of discretion and independent judgment generally "involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered."  29 C.F.R. § 541.202(a).  Importantly, "the decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action."  29 C.F.R. § 541.2(c).  Factors to consider include:

> [W]hether an employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes

or resolving grievances.

29 C.F.R. § 541.202(b). "The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." 29 C.F.R. § 541.202(e). It "implies that the employee has authority to make an independent choice, free from immediate direction or supervision." 29 C.F.R. § 541.202(c). An employee's decisions need not be completely free from review by superiors in order to satisfy this criteria, however. *See Viola v. Comprehensive Health Mgmt., Inc.*, 441 F. App'x 660, 664 (11th Cir. 2011) (finding that management review and approval of business plans before they were finalized did not disqualify a Community Outreach Coordinator from the exemption).

Plaintiff's primary duty was conducting quality control to ensure a manufacturer's production of clothing met Defendant's standards. The question is whether there is a genuine issue of material fact as to whether that primary duty involved the exercise of discretion and independent judgment with respect to matters of significance. Defendant argues Plaintiff admitted in her deposition to exercising discretion and independent judgment in her work. Plaintiff insists that she was discouraged from providing suggestions, questioning superiors or cross-functional partners, or making decisions independently and therefore did not exercise discretion and independent judgment.

There is some evidence Plaintiff did not exercise discretion and independent judgment. Plaintiff testified, for instance, that when a factory called her with a production problem, she would review the problem with her boss. Her boss would tell her specifically how to handle the situation, unless it was a situation that had previously been addressed, in which case she followed the instructions previously given. Cameron

Dep. 45:8–18, ECF No. 38-1. The same was true when dealing with disputes between designers and merchants. *Id.* at 52:15–23. She also testified that she "never made decisions solely . . . ." and that she was not allowed to evaluate or question designs. *Id.* at 32:8–17; 47:13. Mr. Kabbes also testified that tech designers do not make choices about design. Kabbes Dep. 38:12–13, ECF No. 44-1. Defendant points to evaluations in which Plaintiff is told to be more creative and to problem solve, but Plaintiff testified the written evaluations were inconsistent with what she was told orally and that there was no way to be creative in her duties, which merely involved putting measurements to someone else's designs. *Id.* at 148:6–153:8.

On the other hand, Plaintiff testified the expectation was that she would think for herself and try to resolve issues before consulting her manager. Cameron Dep. at 162:1–9. Although decisions were typically made by the design team, she would lay out options for the design team to choose from, and infrequently, she would "creatively solve[] problems . . . ." herself. *Id.* at 23:5–24:20. Sometimes Plaintiff would participate in group discussions about a problem, offer suggestions for resolving the issue, and a group decision would be made as to how to solve the problem. *Id.* at 24: 8–20; 49:8–19; 96:10–21. For example, during fit meetings she offered suggestions that required her to "exercise her brain" to resolve fit problems, and she would also suggest minor adjustments in construction to save money on production. *Id.* at 96:12–21; 181:8–182:4; 83:9–84:1. She further testified that saving money was an important matter to Defendant. *Id.* at 84:2–5.

Further, Plaintiff made independent decisions as to the order of fitting garments and would suggest an order of sending out tech packs to increase efficiency. She

testified that fittings and efficiency are also important pieces of Defendant's business. *Id*
at 53:9–18; 54:3–56:19.  Plaintiff also testified that she "worked extensively with
[factories] to make sure that they understood the level that [Defendant] was expecting of
them." *Id*. at 165:12–14.  Plaintiff also independently evaluated fit samples and
determined whether they complied with Defendant's standards, and she testified that
task was important to Defendant. *Id*. at 129:20–130:14.

There is a genuine issue of material fact as to whether Plaintiff exercised
discretion and independent judgment in her primary duties with respect to matters of
significance.  In so finding, the Court considers the factors listed in 29 C.F.R. §
541.202(b) and the other evidence presented by Defendant.

Defendant only argues the evidence supports a finding of half of the ten factors
set forth in § 541.202(b) for consideration.  There is no evidence Plaintiff had authority to
commit Defendant in matters having a significant financial impact, had authority to
deviate from established policies and procedures without prior approval, had authority to
negotiate or bind Defendant on significant matters, was involved in planning long- or
short-term business objectives, or represented Defendant in handling complaints,
arbitrating disputes, or resolving grievances.  *See* 29 C.F.R. § 541.202(b).

With respect to the other half of the factors and evidence presented, Plaintiff
offered evidence she had no authority to make independent choices about design or
even how to resolve problems that arose.  For example, Plaintiff testified that the
creation of tech packs involved "measuring and interpreting data that [she was] given . . .
. [I]t was very analytical and technical in the sense of [she] would measure the garment
specifically, record the first measurements, articulate the measurements, correspond

about the measurements." Cameron Dep. 27:10–18. Defendant argues sending the tech packs to vendors with Defendant's specifications constitutes a "major assignment in conducting the operations of the business," but that is not clear from the evidence presented.

Moreover, while there is evidence that Plaintiff may have offered recommendations to resolve fit problems or to save money, there is also evidence that she often merely laid out possible options rather than making actual recommendations. *Compare* Cameron Dep. 49:18–19 ("I would tell them, these are some of our options, yes."); *Id.* at 24:19–22, 49:8–19 (stating she would lay out options and design team would select one); *Id.* at 38:9–13 (testifying she would communicate viable options to her bosses and "usually they would tell me what they wanted me to do and my opinion was not necessary."); *with* Cameron Dep. 96:12–13 ("You just testified that you did suggest ideas during these fit meetings, right? Yes."). It is not evident that laying out options constitutes providing consultation or expert advice, as Defendant argues. Further, there is evidence that any recommendations she did make were based on Plaintiff's mere application of well-established techniques, procedures and specific standards set by Defendant. Cameron Dep. 83:11-84:1, ECF No. 38-1 (Plaintiff offered suggestion to save money on garment based on how previous identical situation was handled); *Id.* at 181:16–19 (Plaintiff offered suggestions based on similar situations that arose previously).

Moreover, the only decision Plaintiff made independently was the order of fitting garments, and Defendant has not shown that such a decision was a matter of significance. Although Plaintiff testified fittings in general are an important part of

Defendant's business, there is a genuine issue of material fact as to whether the decision regarding the order of fittings was a matter of significance.

A genuine issue of material fact exists as to whether Plaintiff exercised discretion and independent judgment. Summary judgment under the administrative exemption is denied.

## B. Professional Exemption

Defendant also moves for summary judgment pursuant to the Professional Exemption. The FLSA exempts from overtime payments those employees who are employed in a bona fide professional capacity. 29 U.S.C. § 213(a)(1). An "employee employed in a bona fide professional capacity" is, in pertinent part, an employee:

(1)    Compensated on a salary or fee basis at a rate of not less than $455 per week…exclusive of board, lodging, or other facilities;

(2)    Whose primary duty is the performance of work:

    (i)    Requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; or

    (ii)    Requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor.

29 C.F.R. § 541.300(a). Defendant argues Plaintiff qualifies as a learned professional under (2)(i) above. The primary duty test involves three elements:

(1)    The employee must perform work requiring advanced knowledge;

(2)    The advanced knowledge must be in a field of science or learning; and

(3)    The advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction.

29 C.F.R. § 541.301(a).

As with the administrative exemption, the employer bears the burden of proving the employee's qualification under the professional exemption, and such a finding is narrowly construed against the employer. *Rutlin v. Prime Succession, Inc.*, 220 F.3d 737, 740 (6th Cir. 2000). Further, determining whether an employee qualifies under the professional exemption is "intensely fact bound and case specific." *Birkemose-Hansen v. Zwanenberg Food Grp. (USA), Inc.*, No. 1:09-cv-203, 2010 WL 2854128, at *6 (S.D. Ohio July 19, 2010) (citing *Bohn v. Park City Grp., Inc.*, 94 F.3d 1457, 1461 (10th Cir.1996)). The key inquiry "focus[es] on evidence regarding the actual day-to-day activities of the employee rather than more general job descriptions contained in resumes, position descriptions, and performance evaluations." *Id.* (quoting *Shaefer v. Ind. Mich. Power Co.*, 358 F.3d 394, 401 (6th Cir. 2004)).

The regulations expressly list positions that qualify under the professional exemption: registered or certified medical technologists, nurses, dental hygienists, physicians assistants, accountants, chefs, paralegals, athletic trainers, funeral directors/embalmers, and medical technologists. 29 C.F.R. § 541.301(e)(1)–(9). Technical designer is not listed, but the list is not exclusive.

**1. Salary or Fee Basis of Not Less Than $455 per week**

The Court has already addressed this requirement in its analysis of the administrative exemption above. The same analysis applies to the professional exemption. There is no genuine dispute of material fact that this requirement has been met.

## 2. Primary Duty Requirement

The first prong of the primary duty requirement is that the employee must perform work requiring advanced knowledge. Work requiring advanced knowledge "means work which is predominantly intellectual in character, and which includes work requiring the consistent exercise of discretion and judgment, as distinguished from performance of routine mental, manual, mechanical or physical work." 29 C.F.R. § 541.301(b). "An employee who performs work requiring advanced knowledge generally uses the advanced knowledge to analyze, interpret or make deductions from varying facts or circumstances." *Id.*

Defendant argues the evidence submitted in support of the administrative exemption, showing Plaintiff's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance, also shows Plaintiff's primary duties required the consistent exercise of discretion and independent judgment such that her work required advanced knowledge. Mot. Summ. J. 19, ECF No. 39. Plaintiff maintains there are genuine issues of material fact as to this requirement.

For the same reasons the Court found there is a genuine issue of material fact as to whether Plaintiff's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance, the Court also finds there is a genuine issue of material fact whether Plaintiff consistently exercised discretion and judgment to satisfy the professional exemption.

Moreover, whether Plaintiff's work required the consistent exercise of discretion and judgment is only one aspect of whether her work required advanced knowledge. In addition, it must be work which is predominantly intellectual in character. Defendant has

not put forth any argument or evidence that her work was predominantly intellectual in character, and summary judgment is denied for this reason as well.

Because there is a genuine issue of material fact with respect to the "advanced knowledge" requirement, the Court will not consider the remaining requirements. Summary judgment on the professional exemption is denied.

## IV. DISPOSITION

For the above reasons, the Court **DENIES** Defendant's motion for summary judgment.


**IT IS SO ORDERED.**

_____
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**